UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NIGEL HARRIS,

    Petitioner,

v.   Case No: 6:14-cv-994-Orl-31TBS

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS
and ATTORNEY GENERAL, STATE OF
FLORIDA,

    Respondents.
_____/

## ORDER

This cause is before the Court on the Petition for Writ of Habeas Corpus ("Petition," Doc. 1) filed by Petitioner pursuant to 28 U.S.C. § 2254. Respondents filed a Response to Petition ("Response," Doc. 6) in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts*. Petitioner filed a Reply (Doc. 9) to the Response. For the reasons set forth herein, the Petition is denied.

### I.    Procedural Background

The State Attorney of the Ninth Judicial Circuit charged Petitioner by information in Orange County, Florida with vehicular homicide (count one), driving while license suspended causing serious bodily injury or death (count two), and possession of a firearm by a convicted felon (count three). (Doc. 7-3 at 5). Count three

was severed for trial, and the State later entered a *nolle prosequi* as to that count.  (*Id*. at 40; Doc. 7-5 at 209).  A jury found Petitioner guilty as to counts one and two.  (Doc. 7-4 at 14-15).  However, the trial court later entered a judgment of acquittal as to count two.  (Doc. 7-5 at 12).  The trial court adjudicated Petitioner guilty of the remaining crime and sentenced him to imprisonment for a term of twenty years.  (Doc. 7-4 at 12-13; Doc. 7-5 at 22).   Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal ("Fifth DCA"), which affirmed *per curiam*.  (Doc. 7-16 at 32).

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 raising two grounds, and the trial court entered an order granting an evidentiary hearing as to ground two only.  (Doc. 7-16 at 37, Doc. 7-17 at 44).  After the evidentiary hearing, the trial court entered an order denying both grounds.  (Doc. 7-17 at 102-03; Doc. 7-18 at 1-4).  Petitioner appealed the denial, and the Fifth DCA affirmed the denial *per curiam*.  (Doc. 7-18 at 56).

## II.   LEGAL STANDARDS

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id.*

---

[1] In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state

3

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

B. **Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of

---

court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

[2] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

4

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.  ANALYSIS

**A.  Claim One**

Petitioner argues that the trial court erred in refusing to allow his counsel, James Dauksch, to cross-examine Tiffany Williams, a passenger in the car and a witness for the State. This claim was raised on direct appeal and affirmed.

On cross-examination, Dauksch asked Williams as follows: "At the time of the—the accident—was there a police car following—." (Doc. 7-9 at 28). The State objected on the basis that it was beyond the scope of direct examination. (*Id*.). The trial court

5

sustained the objection, and Dauksch asked that Williams be "bound by this Court's subpoena in case I want to call her as a rebuttal witness." (*Id*. at 213, 223). The next day, Williams failed to appear, and Dauksch moved for a mistrial. (Doc. 7-11 at 41-43). Dauksch argued that Petitioner was denied a fair trial because he was denied an opportunity to explore issues on cross-examination that would have cast doubt on the State's case. (*Id*. at 43-44). The trial court reserved ruling and then subsequently denied the motion for mistrial finding that the defense had the opportunity to subpoena Williams and others to assist in developing their defense but did not. (*Id* at 50; Doc. 7-13 at 16-18).

After the denial, Dauksch initially asked for a week or two to find Williams; however, after consulting with Petitioner, Dauksch withdrew that request and wanted to proceed with the trial without Williams. (Doc. 7-13 at 18-24). In fact, Petitioner explicitly affirmed on the record that he did not want an adjournment to find Williams. (*Id*. at 24-25).

The Court finds that this claim is without merit. First, Petitioner had the opportunity to request a continuance of the trial, and he, himself, made the decision to move forward with the trial without Williams. Next, Petitioner has failed to set forth exactly what would have been revealed on further cross-examination.

Finally, the Confrontation Clause necessarily includes the right to cross-examination a witness. *Smith v. Illinois*, 390 U.S. 129, 131 (1968). The right to cross-examination is not without limits, as "the Confrontation Clause guarantees an

6

opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). "The scope of cross-examination regarding a particular line of inquiry is within the sound discretion of the trial court, and it may exercise a reasonable judgment in determining when a subject is inappropriate." *Brown v. Sec'y for Dep't of Corr.*, 285 F. App'x 578, 584 (11th Cir. 2008).

Here, the trial court sustained the State's objection to a question by Dauksch that was beyond the scope of direct examination. The trial court properly sustained the objection. Under the circumstances, Dauksch engaged in sufficient cross-examination, and the trial court neither abused its discretion nor violated the Confrontation Clause.

As such, Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, claim one is denied.

  **B. Claim Two**

Petitioner alleges that counsel was ineffective for failing to advise him of the maximum sentence he faced and for failing to advise him that he qualified for enhanced sentencing as a habitual violent felony offender, which caused him to reject a favorable plea offer. He claims that he was unaware that the maximum sentence was thirty years. This claim was raised in Petitioner's Rule 3.850 motion and was denied because Dauksch advised him "of the possibility of consecutive sentencing and of a maximum

7

imprisonment of 35 years . . . [and because Petitioner] voluntarily rejected the State's offer of 8 years." (Doc. 7-18 at 3).

In *Missouri v. Frye*, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), the Supreme Court held that the Sixth Amendment right to effective assistance of counsel extends to plea negotiations. In order to show prejudice, a defendant must demonstrate a reasonable probability that: (1) he would have accepted a plea offer but for counsel's ineffective assistance; (2) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it; and (3) the plea would have resulted in a lesser charge or a lower sentence. *Frye*, 132 S. Ct. at 1409; *Lafler*, 132 S. Ct. at 1384–85.

At the evidentiary hearing, Dauksch testified that he discussed the strengths and weaknesses of the case with Petitioner and conducted extensive discovery. (Doc. 7-17 at 81-82). Dauksch discussed the State's plea offer of 8 years "over and over and over again" and that Petitioner "was quick to reject it." (*Id*. at 83). Dauksch believed that he told Petitioner that he could possibly be sentenced to 35 years and that there was "no way" he would have told Petitioner that these sentences would run concurrently. (*Id*. at 84-85, 88).

The record reveals that Dauksch advised Petitioner as to the maximum sentence in this case and that the sentences could run consecutively. Petitioner has failed to demonstrate that Dauksch acted deficiently with regard to this matter or that he sustained prejudice. In particular, he has failed to establish that he would have

8

accepted the plea but for counsel's alleged ineffectiveness or that the trial court would have accepted it. As such, there has been no showing that the state court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. Consequently, Petitioner is not entitled to federal habeas relief on this claim.

### C. Claim Three

Lisa Pean was the owner and front seat passenger of the car at the time of the fatal crash that led to Petitioner's arrest and eventual conviction. (Doc. 7-17 at 102). Petitioner alleges that there is newly discovered evidence he received after the trial in the form of a letter from Pean, who indicated that Williams informed her that Petitioner was not the driver of the car. This claim was raised in Petitioner's Rule 3.850 motion and was denied because "the forensic evidence proved that Defendant was driving the vehicle, [and] any statements by Ms. Pean to the contrary would not likely produce an acquittal on retrial." (Doc. 7-18 at 2).

A claim of actual innocence based on newly discovered evidence is not cognizable in habeas proceedings because federal habeas relief is designed to rectify constitutional violations, rather than factual errors. *See Herrera v. Collins*, 506 U.S. 390, 390–91 (1993) ("[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the course of the underlying state criminal proceedings."). Petitioner has not asserted that a constitutional violation occurred in

9

the course of his trial, and, therefore, his claim is not cognizable in a federal habeas petition.

Moreover, as to the merits, the trial court's denial of Petitioner's claim was not contrary to or involved an unreasonable application of clearly established federal precedent. To successfully plead actual innocence, the petitioner must show that his conviction resulted from "a constitutional violation." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To do so, the petitioner must demonstrate "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Petitioner has not met the standard for actual innocence. First, Petitioner knew that Pean was a passenger in the car at the time of trial. Therefore, he cannot show that he was unaware of this evidence at the time of trial.

Next, Pean's letter does not exculpate Petitioner since she states that she was asleep and did not know who was driving. (Doc. 7-16 at 44). Her only knowledge was based on what Petitioner and Williams told her which would have been inadmissible hearsay. (*Id*. at 45). And Williams testified that Petitioner was the driver.

Further, forensic evidence presented at trial established that Petitioner was driving the car based on hair and blood embedded in the windshield. In sum, the Court concludes that Pean's letter does not overcome the evidence of Petitioner's guilt.

Consequently, to the extent Petitioner's claim is cognizable, it is denied pursuant to section 2254(d).

Allegations not specifically addressed herein are without merit.

### IV.  CERTIFICATE OF APPEALABILITY

This Court should grant an application for a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). However, the petitioner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner fails to demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner fails to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

### V.  CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2. This case is **DISMISSED with prejudice**.

3. Petitioner is **DENIED** a certificate of appealability in this case.

4.      The Clerk of the Court is directed to enter judgment in favor of Respondents and to close this case.

**DONE** and **ORDERED** in Orlando, Florida on March 7, 2016.



_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party
OrlP-2 3/7